UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

FRANK DIAZ,

**DEFENDANT'S LOCAL
RULE 56.1 STATEMENT OF
UNDISPUTED FACTS**

Plaintiff,

-against-

CITY OF NEW YORK DEPARTMENT OF
SANITATION,

06 Civ. 2537 (CLB)

Defendant.

-------------------------------------------------------------------- x

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, defendant the New York City Department of Sanitation (referred to herein as "Defendant" or "DSNY"), submits this Statement of Material Facts as to which there are no genuine issues to be tried:

1.  Plaintiff, a former General Superintendent Level I with DSNY, brings this action pursuant to Title VII of the Civil Rights Act of 1964 and New York Executive Law § 290, alleging that defendant discriminated against him based upon his race and/or national origin. Specifically, plaintiff alleges that he has been repeatedly passed over for promotion by less qualified, non-Hispanic employees.  See Exhibit "A."[1]  Plaintiff also claims that defendant retaliated against him when he complained of the discrimination and that ultimately, he was forced to retire. See Exhibit "B" at 183: 9-10; 184: 13-118; 188: 17-18, 25; 189: 1-6; 191: 18-25; 192: 1-17.

---

[1] Unless otherwise indicated, all exhibits cited to herein refer to those exhibits annexed to the Declaration of Camille D. Barnett, dated March 2, 2007, and submitted herewith.

2.

## A.   Background

3.   Plaintiff is a Hispanic male of Puerto Rican national origin. See Exhibit "A" at ¶ 7.

4.   On August 25, 1986, plaintiff was appointed to the civil service title of Sanitation Worker and began his employment with DSNY.  See Exhibit "B" at  20:20-22; 21:5-10; see also, Exhibit "C."  Thereafter, on May 1, 1989, plaintiff requested and was granted a transfer to the position of Sanitation Police.  See Exhibit "B" at 31:11-21;  see also Exhibit "C."

5.   In June of 1990, plaintiff took a Civil Service Exam for the position of Sanitation Supervisor.  See Exhibit "B" at 46:11-20.  On July 16, 1990, plaintiff received a provisional promotion to the position of Sanitation Police Supervisor and on February 25, 1991, plaintiff was permanently appointed to the position of Sanitation Supervisor.  See Exhibit "B" at 46: 7-12; see also Exhibit "C."  Thereafter, in 1995 plaintiff took the Civil Service Exam for the position of General Superintendent Level I ("GS I") but failed the examination.  See Exhibit "B" at 75:3-17.  For the first examination, plaintiff was required to complete and pass both a written and a verbal examination.  See Exhibit "B" at 76:5-25; 78:6-11; 79:13-18.  While plaintiff passed the written examination on his first attempt, he failed the verbal portion of the examination.  See Exhibit "B" at 81: 21- 82:1-3.

6.   In 1999, plaintiff took a second Civil Service Exam for the position of GS I position, which he passed.  See Exhibit "B" 73: 18-23; 74: 24-25; 75: 1-17.  For the second examination, there was no longer a verbal portion to the examination and it was only a written competitive examination.  See Exhibit "B" at 84: 22-24; 85: 2-7; 87: 7-21.

7.  Plaintiff was then placed on an eligible list and on August 13, 2001, plaintiff was promoted to the position of GS I. See Exhibit "B" at 73:16-23; see also Exhibit "C."

**B.      Plaintiff's Allegations of Race and National Origin Discrimination**

8.  Plaintiff testified in his deposition that he believed that he was first discriminated against by DSNY in 2002, following his promotion to GS I. See Exhibit "B" 92: 6-12, 18-20, 25; 93: 1-2.  Specifically, plaintiff felt discriminated against when he was not given a steady assignment or a district to be in charge of. See Exhibit "B" 93: 3-12.

9.  Plaintiff also alleges that he was repeatedly passed over for promotion by less-qualified, non-Hispanic employees. See Exhibit "A" at ¶ 16.  Specifically, plaintiff alleges in the Complaint that he submitted all the required materials and applied for promotion to General Superintendent Level II ("GS II") in October 2004, but was not selected and was not given an adequate explanation why. See Exhibit "A" at ¶ 15.  Plaintiff goes on to allege that he has met and exceeded the requirements for the promotion to GS II but is being illegally denied promotions to the Department's higher levels based on race/national origin. See Exhibit "A" at ¶ 19.

10. Additionally, plaintiff alleges that he believed that the decision not to promote him in 2004, 2005, and 2006 to the GS II positions were based upon discriminatory animus. See Exhibit A at ¶ 23; see also Exhibit B 160: 4-6.

**(a) General Superintendent Level II Promotion Process**

11. The promotion process for the General Superintendent Level II ("GS II") position has three steps. See Exhibit "D" Promo process."  During the first step, when DSNY determines that there is a need to fill GS II vacancies, a Department message notifying personnel of potential job vacancies and requesting recommendations is sent to all Department locations.

Thereafter, General Superintendents Level III and above are required to recommend Superintendents (GS I) for promotion. Any Deputy Commissioner, and General Superintendent Level III or IV may make such a recommendations. In considering whether to recommend a candidate, the recommending individual should discuss the recommendation with the individual and instruct him or her to complete the Personal Application in support of his or her own candidacy. See Exhibit "D"; see also, Exhibit "O" and Exhibit AA."

12. Each Borough Superintendent is only able to submit the number of nominees set forth below for promotion from District Superintendent to General Superintendent Level II: Bronx – 2 Nominees; Brooklyn North – 1 Nominee; Brooklyn South – 2 Nominees; Manhattan – 2 Nominees; Queens East – 2 Nominees; Queens West – 2 Nominees and Staten Island – 1 Nominee. Id.

13. In the second step of the promotion process, a Nominating Committee reviews all of the candidate's Promotion Recommendation/Appraisal form, the Personal Application form and the entire Personnel folder. In addition, candidates will be personally interviewed by the nominating Committee. Upon completion of this process, the committee will forward applicants that the Committee deems qualified to be considered by the Final Selection Committee. See Exhibit "D."

14. In the third step, a Final Selection Committee convenes to review the candidates selected by the Nominating Committee and then interviews the candidates selected by the Nominating Committee. See Exhibit "D." The Final Selection Committee convenes to select those candidates that will be promoted. All recommendations will then be forwarded to the Commissioner for final approval.

15. Plaintiff felt the 2004, 2005 and 2006 promotions were racially biased.

**(b) Plaintiff Was Not Qualified For A Promotion To A GS II Position In October 2004 And Therefore Was Not Nominated.**

16. Plaintiff alleges that in response to an August 24, 2004 departmental posting, he applied for a promotion to a GS II position. See Exhibit "B" at 128:4-25; 129:1-25; 130:1- 9; see also Exhibit " F".

17. Plaintiff contends he was not selected and he was not given an adequate explanation as to why he was not promoted.   See Exhibit A at ¶ 15.

18. Plaintiff also claims that in 2004, a Michael Bonacorsa, Caucasian male, was promoted to GS II in October of 2004, ahead of plaintiff, although plaintiff alleges that he was better qualified. See Exhibit A at ¶¶ 16-17; see also, Exhibit "B" at 132:22-25; 133:1-11.

19. Plaintiff testified that in order to be promoted from a GS I to a GS II, an employee had to have two consecutive Superior ratings on his or her performance evaluations. See Exhibit "B" at 114: 25-115: 1.

20. Additionally, the department message for the October 2004 position indicates:

> To qualify for a nomination, a candidate must have been rated "superior" or "outstanding" on his/her Annual Performance Evaluations for Calendar Years 2002 and 2003." See Exhibit "F".

21. Plaintiff concedes that he received a rating of "Satisfactory" on his 2002 performance evaluation. See Exhibit "B" at 124:14-16; 131:18-25-132: 1; see also Exhibit "G.".

22. Plaintiff testified that a nomination from an immediate supervisor is required for promotion to the GS II position. See Exhibit "B" at 132:9-11. However, plaintiff conceded that his supervisor at the time, Mr. Light, did not even nominate him for this promotion and as such, he could not be considered for promotion in August 2004. See Exhibit B 132: 9-21; 141: 13-15, 160:15-17.

23. Michael Bonacorsa's promotion materials indicate that he received an Overall rating of "Outstanding" on his 2002 performance evaluation, and an Overall Rating of "Outstanding" on his 2003 performance evaluation. See Exhibit "H."

**(c) Plaintiff Contends That Other Hispanics Were Denied Promotions.**

24. Plaintiff also alleges that other Hispanics were being denied promotions. See Exhibit A at ¶ 19.  Plaintiff testified that other Hispanics employed by DSNY such as Elisio ("Jay") Vagara, Jose Garcia and Tony Irizarry were being denied promotions based upon their Hispanic origin. See Exhibit "B" at 150:24-151:10.  However, plaintiff testified that both Jay Vagara and Jose Garica held the position of GS II. See Exhibit "B" at 152:14-17. See Exhibit B 153: 13-19.

25. Additionally, plaintiff had no knowledge of either Mr. Vagara's or Mr. Garcia's employment records. See Exhibit "B" at 154: 23-24.

26. With regard to Mr. Tony Irizary, plaintiff testified that he was a GS I but that he was not familiar with this performance evaluations, work history or employment records. See Exhibit B 153: 20; 154: 3-4, 18-22, 25; 155: 1.

**(d) Plaintiff Was Recommended For A Promotion to A GS II Position On June 3, 2005.**

27. Plaintiff testified that he applied for a GS II position in 2005 pursuant to a department message/notice dated, May 12, 2005. See Exhibit B 160: 15-25; 161: 1-8; see also Exhibit "I" , Exhibit "J" and Exhibit "K".

28. Plaintiff was recommended for promotion by his superior, Joseph Andrew dated, June 3, 2005. See Exhibit "J".  Also, plaintiff submitted an application for promotion dated, May 31, 2005, which was submitted to the Nominating Committee. See Exhibit "K". Thereafter, the Nominating Committee reviewed his application and interviewed him.

29. A total of fifteen candidates were nominated for promotion to the GS II position in 2005. See Exhibit "L." After review by the Nominating Committee, two candidates were eliminated based on failure to meet the minimum qualifications and thirteen nominees were sent to the Final Selection Committee, who made the final determination as to which nominees should be promoted. Id.

30. Plaintiff and the other nominees were interviewed by the Nominating Committee and plaintiff was selected to proceed to the second interview with the Final Committee. See Exhibit "B "162: 6-7; 163: 12-25; 166: 2-4; see also Exhibit "P." All candidates were interviewed by the Final Selection Committee.

31. On or about June 29, 2005, Michael A. Bimonte, First Deputy Commissioner, sent plaintiff a letter in which he was notified that he had not been selected for promotion to a GS II position. See Exhibit "N"; see also Exhibit "B" 166: 5-13.

32. .  As explained by the EEO Director for DSNY, Fernando Camacho, plaintiff was not selected for promotion at that time. See Exhibit "O."

33. A total of seven nominees were promoted to the GS II position. See Exhibit "M". The successful candidates were: Thomas Killeen; Vincent DiPolo; Carl Novelli; Nicholas Vero; Chi Dong; Frank Costanzo and Myron Priester. Id.; see also Exhibits "Q", "R", "S", "T", "U", "V" and "W,"

### (e) Plaintiff Was Again Recommended For A Promotion to A GS II Position On March 28, 2006.

34. Plaintiff applied for promotion to GS II in March 2006 pursuant to a department posting/message. See Exhibit B 171: 25; 172: 1-2; see also Exhibit "W" and Exhibit "X." On or about April 18, 2006, plaintiff was interviewed by the Nominating Committee. See Exhibit "BB."

35. A total of 17 nominees sought promotion to the GS II position in April 2006. See Exhibit "AA". However, in a Department memorandum dated, April 19, 2006, plaintiff was not a selected nominee to proceed to second interviews with the Final Selection Committee. See Exhibit "AA"; see also Exhibit B 173: 6-7, 18-22.

36. Plaintiff was advised in correspondence from First Deputy Commissioner, Michael A. Bimonte, dated, April 20, 2006, that he was not a selected candidate to appear before the Final Selection Committee. See Exhibit "Z."

37. A total of 10 nominees advanced to the second interview before the Final Selection Committee. Id. As explained by the Chair of the Nominating Committee, Bernard Sullivan, the Nominating Committee determined that plaintiff should not be promoted at that time. See Exhibit "AA."

**(f) Plaintiff Complained To DSNY's EEO Office About His 2004 Performance Evaluation, Which He Believed Was Evidence of Discriminatory Animus.**

38. Plaintiff claims that he received a "Satisfactory" rating on his 2004 performance evaluation because of discriminatory animus. See Exhibit "A" at ¶ 23; see also, Exhibit "B" 159: 1-4.

39. On January 25, 2005, plaintiff complained to Fernando Camacho, the DSNY's EEO Director, about his 2004 Annual Performance Evaluation and his belief that this evaluation was motivated by discriminatory animus. See Exhibit "A" at ¶ 23; see also Exhibit "B" 115: 15-25, 116: 7-9 and Exhibit "BB."

40. DSNY EEO Director, Fernando Camacho is a Hispanic of Puerto Rican origin. See Exhibit "O."

41. Following plaintiff's complaint and meeting with EEO Director, Fernando Camacho, an investigation into plaintiff's 2004 evaluation was conducted and resulted in certain

findings which plaintiff was advised of in a February 17, 2005 letter from Fernando Camacho. <u>See</u> Exhibit "BB."   The letter from Mr. Camacho advised that plaintiff's 2004 evaluation rating was changed from "Satisfactory" to "Superior" pursuant to the review process for evaluations. <u>See</u> Exhibit "B" at 178: 11-12, 14-15; 179: 1-5; <u>see also</u> Exhibit "BB."

**C.**    **Plaintiff's Claims That In Retaliation For His Complaint to EEO Officer Camacho, He Was Transferred To A Less Preferable Assignment And Thereafter He Was Forced To Retire.**

42. Plaintiff testified that he believes that he was retaliated against for complaining to the DSNY's EEO Officer in January 2005. <u>See</u> Exhibit "B" 180: 6-13.

43. On December 7, 2005, plaintiff was transferred from his assignment location and made a rotating officer. <u>See</u> Exhibit "B" 180: 11-19; 182: 4-7.

44. Plaintiff believes that there are other rotating officers and that it was the way in which his reassignment was done that he believes was retaliatory. <u>See</u> Exhibit "B" 181: 13-25. <u>See</u> Exhibit "B" 180: 18-25; 181: 16-25.

45. Plaintiff claims that after he was placed on a rotating assignment on December 7, 2006, he went out on sick leave for approximately six weeks. <u>See</u> Exhibit "B" at 183: 9-18; 184: 19-25.  Plaintiff returned to work from sick leave six weeks thereafter, for a four month period, however, plaintiff claims that because he could not go to work without medication, for medical reasons, he decided to retire as he did not want to continue taking the medication. <u>See</u> Exhibit "B" at 183: 9-10; 184: 13-118; 188: 17-18, 25; 189: 1-6; 191: 18-25; 192: 1-17.

46. Thereafter, plaintiff decided to take a service retirement after 20 years of service and retired in September of 2006. <u>See</u> Exhibit "B" 183: 1-8.

**D.**    **Plaintiff Filed A Charge of Discrimination With the EEOC**

47. On July 19, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.  See Exhibit B 176: 8-24; see also Exhibit "DD." Plaintiff claimed that he was repeatedly passed over for promotion to General Superintendent Level II by less-qualified, non-Hispanic employees.  Id.

48. Prior to a determination by the EEOC and on or about January 3, 2006, plaintiff requested a Right to Sue letter so that he could pursue the matter in Federal Court.  See Exhibit "EE."

49. In accordance with the dismissal of the charge, on or about March 6, 2006, the EEOC issued a Right to Sue Letter.  See Exhibit "FF".

50. On or about  March 31, 2006, plaintiff filed the instant complaint. See Exhibit "A."

Dated:      New York, New York
            March 2, 2007


                        MICHAEL A. CARDOZO
                        Corporation Counsel of the
                         City of New York
                        Attorney for Defendant
                        100 Church Street
                        New York, New York 10007
                        (212) 788-8685

                   By:  _____
                        Camille D. Barnett (CB3615)
                        Assistant Corporation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that, on march 2, 2007, I caused a true and correct copy of the foregoing Defendant's Notice of Motion for Summary Judgment, Declaration of Camille D. Barnett In Support of Defendant's Motion for Summary Judgment, Defendant's Local Rule 56.1 Statement of Undisputed Facts and Memorandum of law in Support of Defendant's Motion for Summary Judgment, to be served by mail on Paul N. Cisternino, Esq., attorney for plaintiff, at his office at 701 Westchester Avenue – Suite 308W, White Plains, New York 10604.

Dated:     New York, New York
          March 2, 2007

                MICHAEL A. CARDOZO
                Corporation Counsel of the
                  City of New York
                Attorney for Defendants
                100 Church Street, Room 2-141
                New York, New York 10007
                (212) 788-8685

By: _____
                Camille D. Barnett (CDB 3615)
                Assistant Corporation Counsel

Docket No.  06 Civ. 2537 (CLB )

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK DIAZ,

Plaintiff,

-against-

CITY OF NEW YORK DEPARTMENT OF
SANITATION

Defendant.

## DEFENDANT'S LOCAL RULE 56.1
## STATEMENT OF UNDISPUTED FACTS

**MICHAEL A. CARDOZO**
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, N.Y. 10007
Of Counsel: Camille Barnett
Tel: (212) 788-8685
NYCLIS No. 06LE00130

Due and timely service is hereby admitted.
New York, N.Y.                , 200......
        Esq.
Attorney for